IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **SNMP RESEARCH, INC.** and **SNMP RESEARCH INTERNATIONAL, INC.**, | : : : : |
| **Plaintiffs,** | : **CIVIL ACTION** : **FILE NO.:** _____ |
| v. | : : : |
| **SCANSOURCE, INC.,** | : : |
| **Defendant.** | : : |

## COMPLAINT FOR COPYRIGHT INFRINGEMENT

COME NOW, Plaintiffs, SNMP Research, Inc. ("SNMPR") and SNMP Research International, Inc. ("SNMPRI") (collectively, "Plaintiffs"), by and through counsel, and hereby bring this complaint for copyright infringement against Defendant ScanSource, Inc.

### PARTIES

**1.**

Plaintiff SNMP Research, Inc. ("SNMPR") is a Tennessee corporation with its principal place of business in Knoxville, Tennessee.

**2.**

Plaintiff SNMP Research International, Inc. ("SNMPRI") is a Tennessee

1

corporation with its principal place of business in Knoxville, Tennessee.

**3.**

Defendant ScanSource, Inc. d/b/a Catalyst Telecom and, alternatively, d/b/a ScanSource, Catalyst is a South Carolina corporation with its principal place of business in Greenville, South Carolina. ScanSource, Inc. is registered to do business in Georgia and maintains an office at 250 Scientific Drive NW in Norcross, Georgia.

**Jurisdiction and Venue**

**4.**

This Court has subject matter jurisdiction over the copyright causes of action pursuant to 28 U.S.C. §§ 1331 and 1338.

**5.**

Personal jurisdiction exists over Defendant ScanSource, Inc. because it does business in this District and is committing copyright infringement in this District. Defendant operates a significant office in Norcross, Georgia from which it offers training on and sells, licenses, and distributes the products of Avaya Inc. ("Avaya") described in this Complaint. Defendant employs a number of Georgia residents in its Norcross operation and is actively involved in copyright infringement in this District.

**6.**

Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and (c)(2) because a substantial part of the events giving rise to Plaintiffs claims occurred in this District and because Defendant resides in this District.

## FACTS

**A.   Background**

**7.**

In 1988, University of Tennessee computer science professor Dr. Jeffrey Case and one of Dr. Case's graduate students founded the business that would later become Plaintiffs SNMPR and SNMPRI  Based in Knoxville, Tennessee, Dr. Case was instrumental in developing technology that manages devices used in computer networks (such as the Internet).

**8.**

One of the foundational technologies of modern computer networks is the Simple Network Management Protocol ("SNMP"), from which the Plaintiffs take their name. Dr. Case was instrumental in creating this protocol. The SNMP protocol is a way for connected devices to share information by sending and responding to messages. For example, a laser printer may communicate with a connected computer using SNMP to pass messages regarding the printer's status

and health (*e.g.*, offline, needs paper, busy, etc.).

**9.**

Since its creation in the early 1990s, with the help of Dr. Case, the SNMP protocol has become ubiquitous and the vast majority of managed computing devices in the world implement the protocol.

**10.**

Plaintiffs are the owners of sixteen (16) registered copyrights (the "Copyrights") as listed below:

| Company | Product | Registration Date | Registration Number |
|---|---|---|---|
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 15 | January 25, 2011 | TXu 1-706-718 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 15.2 | July 20, 2011 | TXu 1-772-248 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 15.3 | July 20, 2011 | TXu 1-772-250 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 15.4 | February 3, 2011 | TXu 1-738-956 |

| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 16 | February 3, 2011 | TXu 1-707-158 |
|---|---|---|---|
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 16.2 | February 3, 2011 | TXu 1-738-954 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 17 | February 3, 2011 | TXu 1-707-157 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 17.2 | February 3, 2011 | TXu 1-738-958 |
| SNMP Research International, Inc. | SNMP Research Collection: Source Code and Documentation Version 15 | February 17, 2011 | TXu 1-710-420 |
| SNMP Research International, Inc. | SNMP Research Collection: Source Code and Documentation Version 15.2 | February 17, 2011 | TXu 1-710-462 |
| SNMP Research International, Inc. | SNMP Research Collection: Source Code and Documentation Version 15.3 | February 17, 2011 | TXu 1-710-430 |
| SNMP Research International, Inc. | SNMP Research Collection: Source Code and Documentation Version 15.4 | February 17, 2011 | TXu 1-710-425 |

| SNMP Research International, Inc. | SNMP Research Collection: Source Code and Documentation Version 16 | February 17, 2011 | TXu 1-710-413 |
|---|---|---|---|
| SNMP Research International, Inc. | SNMP Research Collection: Source Code and Documentation Version 16.2 | February 8, 2011 | TXu 1-710-422 |
| SNMP Research International, Inc. | SNMP Research Collection: Source Code and Documentation Version 17 | February 8, 2011 | TXu 1-710-417 |
| SNMP Research International, Inc. | SNMP Research Collection: Source Code and Documentation Version 17.2 | February 17, 2011 | TXu 1-710-435 |

**11.**

Copies of each of the registration certificates are attached as Exhibits 1-16.

**12.**

Plaintiffs SNMPR and SNMPRI own an implementation of the SNMP protocol represented by the Copyrights, including all source code, associated documentation, and Derivative Works, as defined by the Copyright Act, thereof (collectively, "Software").

6

**13.**

While SNMPR owns the copyrights to individual code files, SNMPRI owns copyrights to collections and/or compilations of those files. Thus, a single piece of software may infringe upon the copyrights to the individual files as well as the copyright to the collective works or compilations.

**14.**

SNMPRI has licensed portions of the Software to many of the largest computer and telecommunications companies in the world and it is widely used in the industry. Those firms then use the Software within their own products or to operate their own networks.

**15.**

Defendant is actively infringing Plaintiffs' Copyrights, as described below, by selling, licensing, and distributing certain Avaya products without right, authorization, or license.

B. <u>**Copyright Infringement**</u>

**16.**

On March 14, 1995, SNMPRI executed a license with AT&T GBCS which was subsequently amended (hereinafter, as amended, collectively, the "AT&T License"). The AT&T License allowed AT&T GBCS to include certain portions

of Plaintiffs' Software within particular products in exchange, *inter alia*, for royalty payments.

**17.**

While SNMPRI's licenses, by their terms, are not transferrable, SNMPRI, by written agreement dated September 28, 2000, allowed portions of the AT&T License to be assigned to Avaya.

**18.**

The AT&T License with Amendment 1 dated December 29, 1995, Amendment 2 dated May 5, 1996, Amendment 3 dated May 14, 1996, Amendment 4 dated July 28, 1996, Amendment 5 dated October 21, 1996, Amendment 7 dated October 21, 1996, Amendment 8 dated October 10, 1996, Amendment 12 dated November 15, 1997, Amendment 19 dated March 13, 1998, Amendment 21 dated April 15, 1998, and Amendment 57 dated August 14, 2000 (collectively, "Transferred License") were transferred to Avaya.

**19.**

After the transfer to Avaya, the Transferred License was further modified by Amendment 62 dated December 28, 2000, Amendment 63 dated March 26, 2002, Amendment 64 dated March 26, 2002, Amendment 65 dated March 26, 2002, Amendment 66 dated January 27, 2003, Amendment 67 dated September 16, 2003,

and by letters and an e-mail dated April 2, 2002, May 8, 2002, February 14, 2003, March 21, 2003, and June 19, 2003, respectively (as amended and assigned, collectively, the "Red License").

**20.**

Pursuant to the Red License, Avaya was only granted a limited license to use portions of the Software in particular Bundled Products in Avaya's Company Product, as defined and specified in the Red License ("Red Products").

**21.**

Avaya breached the terms of the Red License and failed to cure that breach. Avaya's wrongdoing included not only breach of contract, but copyright infringement, and misappropriation of Plaintiffs' trade secrets.

**22.**

On February 1, 2012, SNMPRI informed Avaya that Avaya's license rights under the Red License were terminated pursuant to ¶ 18 of the Red License.

**23.**

Despite this termination, Avaya continued to exploit the copyrighted Software in Red Products by manufacturing, selling, licensing, and otherwise distributing those products containing the Software. These actions were without right, authorization, or license and constitute copyright infringement.

**24.**

In addition to these actions, and in a separate act of wrongdoing not tied to Avaya's Red Products, in December 2009, Avaya purchased a product line from the Nortel Networks bankruptcy estate, a portion of which contained Plaintiffs' Software ("Blue Products").

**25.**

These Blue Products, which contained portions of Plaintiffs' Software, were transferred from Nortel Networks to Avaya and, thereafter, sold, licensed, and distributed by Avaya and Avaya's resellers, channel partners, and distributors even though the license agreement between SNMP and Nortel Networks stated the license was nontransferable.  On or about March 3, 2010, a temporary Accession Agreement between the parties became effective when it was fully executed and payment was made by Avaya to Plaintiffs.  The Accession Agreement gave Avaya limited rights to use certain portions of the Software in particular Blue Products while the parties attempted to negotiate a permanent license.

**26.**

According to Avaya's own Court filings, Avaya's rights under the Accession Agreement expired on April 30, 2011.  While Plaintiffs dispute Avaya had the right to distribute Blue Products containing SNMP Software through this date,

there is no dispute that Avaya had no right to distribute Blue Products containing SNMP Software at any point in the three years prior to the filing of this suit.

**27.**

Following the expiration of Avaya's rights under the Accession Agreement, Avaya and its resellers, distributors, and channel partners continued to sell, license, and distribute Blue Products which contained Plaintiffs' Software. These distributions were without right, authorization, or license and constitute copyright infringement.

**28.**

Defendant is among Avaya's largest resellers or distributors. That is, Defendant purchases products from Avaya and redistributes those products to third parties.

**29.**

According to Defendant on its website, accessible at www.scansourcecatalyst.com/en/brands/avaya, "ScanSource Catalyst is the largest value-added distributor of Avaya solutions in the United States, providing unified communications, contact center, video and networking solutions for the reseller community." (last retrieved Nov. 11, 2014).

**30.**

As part of their business, Defendant has, and continues to, sell, license, and distribute Red Products and Blue Products.

**31.**

For the period covered by this suit, through the filing of this action, Avaya had no right to sell, license, or distribute these infringing products to Defendant and Defendant had no right to subsequently sell, license, or distribute the Red or Blue products containing Plaintiffs' copyrighted Software. The distribution of the Red and Blue Products by Defendant violates Section 106, of the Copyright Act, *et seq.*, and constitutes copyright infringement.

**32.**

All Red Products containing Plaintiffs' Software distributed by Defendant after February 1, 2012 are infringing as Defendant has had no right, authorization, or license to distribute Plaintiffs' Software after this date. The distribution of these products by Defendant violates the exclusive right of Plaintiffs to distribute their copyrighted material.

**33.**

Defendant has been and is actively distributing a number of Red Products including the Communication Manager product family, Avaya Aura Messaging

product family, and others which infringe on Plaintiffs' copyrights in its Software.

34.

Likewise, all Blue Products containing Plaintiffs' Software distributed by Defendant within three years of the filing of this Complaint are infringing as Defendant has had no right, authorization, or license to distribute Plaintiffs' Software in these products during that period.

35.

Defendant has been and is actively distributing a number of Blue Products including the Avaya Ethernet Routing Switch (ERS) product families, including, but not limited to the ERS 3500 series, and others which infringe on Plaintiffs' copyrights in its Software.

36.

The manufacture, copying, sale, license, and distribution of the Avaya products described herein by Avaya is and was willful as Avaya knew it has no license to use and distribute products containing the Software.  Likewise, the actions by Defendant constitute willful copyright infringement as Defendant, upon information and belief, knew or should have known that its distribution of the Avaya products with the Software was without license, right, or permission.  The continued copying, licensing, distributing and selling of products containing

Plaintiffs' Software following the filing of this action constitutes continued willful copyright infringement.

**37.**

Defendant's actions in distributing Plaintiffs' copyrighted Software in these periods has resulted in Defendant, upon information and belief, earning tens of millions of dollars and has caused actual damage to Plaintiffs. Plaintiffs are entitled to damages associated with this infringement, including the profits of Defendant attributable to the infringement.

## CAUSES OF ACTION

### Claim I

### Copyright Infringement

**38.**

Plaintiffs reallege and incorporate herein the allegations contained within paragraph 1 through paragraph 37.

**39.**

Plaintiffs are the owners of the sixteen (16) registered Copyrights listed above.

**40.**

Defendant has been distributing the copyrighted Software in Avaya products

it has sold even though it does not have a right, authorization, or license to distribute the copyrighted Software.

**41.**

For instance, Avaya manufactures and sells or licenses a Communication Manager family of products, an Aura Messaging family of products, and an Ethernet Routing Switch family of products, all which contain the copyrighted Software.

**42.**

By distributing Avaya's Communications Manager family of products, Avaya's Aura Messaging family of products, and Avaya's Ethernet Routing Switch family of products, Defendant has been distributing Plaintiffs' Software.

**43.**

On information and belief, Defendant has been distributing other unlicensed products that infringe one or more of the Copyrights.

**44.**

Defendant's conduct infringes on Plaintiffs' copyrighted Software because these exploitations have been undertaken without authorization, permission, consent, right, or license. Defendant's acts violate Plaintiffs' exclusive rights under Section 106 of the Copyright Act, et seq.

**45.**

Each of Defendant's infringements of Plaintiffs' rights constitute a separate and distinct act of infringement, separately actionable under the Copyright Act.

**46.**

Unless enjoined and restrained, Defendant's continued conduct threatens to further infringe Plaintiffs' copyright interests.

**47.**

By reason of Defendant's infringement Plaintiffs have sustained, and will continue to sustain, substantial injury, loss, and damages to their ownership rights in the copyrighted Software.

**48.**

Further, irreparable harm to Plaintiffs is imminent as a result of Defendant's continuing infringement, and Plaintiffs are without an adequate remedy at law. Plaintiffs are entitled to a permanent injunction restraining Defendant, its officers, directors, agents, employees, representatives, and all persons acting in concert with them, from engaging in such further acts of copyright infringement.

**49.**

Plaintiffs are entitled to recover from Defendant the damages sustained by Plaintiffs as a result of Defendant's acts of copyright infringement. Plaintiffs are at

present unable to ascertain the full extent of the monetary damages they have suffered by reason of Defendant's acts of copyright infringement. However, Plaintiffs are entitled to recover their actual damages, including Defendant's profits attributable to the infringement, as will be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS PRAY FOR THE FOLLOWING RELIEF:

1. For a judgment that Defendant has infringed, and continues to infringe, upon Plaintiffs' Copyrights in the registered Software;

2. For actual and compensatory damages from Defendant in an amount to be determined at trial, including pre-judgment and post-judgment interest;

3. For an award of damages for Defendant's copyright infringement;

4. Equitable relief including a permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, all parent and subsidiary companies, all assignees and successors in interest, and those persons in active concert or participation with Defendant, including Defendant's customers, from distributing, displaying, advertising, promoting, licensing, offering for sale, and/or selling or performing any infringing products, and to deliver to the Court for destruction or other reasonable disposition all such materials and means for producing the same in Defendant's possession, custody, or control;

5.  An order that Defendant destroy all products containing the Software;

6.  For an award of reasonable attorneys' fees, costs, and expenses;

7.  For such further and other relief that this Court deems just and proper;

and

8.  For a trial by jury.

Respectfully submitted this 14th day of November, 2014.

**PARKER, HUDSON, RAINER & DOBBS**

*/s/ David B. Darden*
David B. Darden, Esq.
Georgia Bar No. 250341
ddarden@phrd.com
285 Peachtree Center Avenue
1500 Marquis Two Tower
Atlanta, Georgia  30303

John L. Wood
*Pro hac vice to be submitted*
Egerton McAfee Armistead & Davis, P.C.
900 S. Gay Street
Knoxville, TN  37902
(865) 546-0500
jwood@emlaw.com

Richard S. Busch
King & Ballow
*Pro hac vice to be submitted*
315 Union Street
Suite 1100
Nashville, TN  37201
(615) 726-5422
rbusch@kingballow.com